First case this morning is Strack v. Morris, case number 412025. For the appellant, we have Mr. Simpson. For the appellant, Mr. Martin. Mr. Simpson, you may proceed. Good morning, Your Honors. My name is Roger Simpson. I'm an attorney in Monticello, Illinois, and I represent plaintiff appellants John and Jean Strack. This case is before the court on a review of a summary judgment order entered by John P. Schunkweiler of the Circuit Court of Pine County, granting summary judgment to the defendants on a tort case involving the intentional infliction of emotional distress. I will certainly be brief in my description of the facts, as I am sure this tribunal has acquainted themselves with it. Needless to say, this case involves a report of improper touching by a parent of a student athlete, accusing the coach of that action. The gist of this particular case, I believe, is the motivation for the officer, and before he did anything other than take the report, contacting the television station Channel 3 in Champaign, Illinois, which has, I believe, the widest audience in East Central Illinois, and indicating that he was investigating an improper touching by a coach of an athlete at South Piatt. South Piatt was a co-op girl's softball team between DeMent and Atwood. The defendants are a police officer, James Morris, in the village of DeMent, who employs Mr. Morris. The plaintiffs are John Strack, who was the coach, accused, and his wife. Summary judgment was granted based upon provisions of the Illinois Governmental Tort and Immunity Act, specifically 2-201 of that act, which I kind of abbreviate as the policymaking discretion section of the act. And 2-210, which I abbreviate as the provision of information, is the plaintiff's position. It was at the trial level, and it remains here at the appellate level because I think the issue is the same. Since this is summary judgment review, this is a de novo analysis of the facts that were presented to the trial judge so that this panel can see if there was, in fact, a genuine issue of fact. Asserting defenses under the Tort and Immunity Act, of course, are affirmative defenses. They have to be pled, and they have to be proven by a preponderance. In this case, there is no dispute factually that the police officer did contact the media before he did anything in investigating a serious felony, accusation of a serious felony offense. Judge Schunkweiler, in his analysis of the case, I believe asked the correct question in his memorandum order, which is, why did Officer Morris do what he did, and does it fit within the two provisions that he cited, 201 and 210, as being a bar? So the motivation of the defendant police officer was found to be relevant by Judge Schunkweiler, and I believe is really the only relevant point in determining whether his actions are immune under the act or not. As indicated, Mr. Morris' actions in contacting the media was the first step he took after taking a report. I suggest that's highly unusual in a criminal case. Is it true that police often use the media for assistance? Yes. I see articles almost every day saying, have you seen this person who has not showed up to court, or who has wanted... I'll just state it, but why aren't his actions immune? Because I think that the genuine issue is, from the plaintiff's standpoint, is that his actions were not motivated by police procedure, but by his own personal gratitude. If we want to agree with you, would we have to essentially express our disagreement and decline to follow the Goldberg case? The Goldberg case did not involve an expression of an investigation of a felony to the mass media. Well, no case is directly on point on all fours factually, but the Goldberg case felt that immunity applied to the provision of information. And isn't that essentially what we have here? We have the provision of information to... Well, I think essentially what we have here is a case of first impressions. Well, I'm talking about the provision of information portion of the statute providing for immunity. A public employee acting in the scope of his employment is not liable for an injury caused by the provision of information, either orally or in writing. Isn't that how it can and should be run? That certainly is the correct statement of that statute. I think that statute is, as I pointed out in my brief, subject to interpretation. I don't believe it's unambiguous. But the ambiguity essentially appears, Mr. Simpson, to be you don't like it. And by the way, I'm entirely sympathetic. I could see your sense that what occurred here was a bad thing and was bad practice and all that, but the legislature is the policy-making body. Everybody has decided for whatever reason that we want to provide for court immunity for public employees. And if it seems to fit, and I'm not sure why it doesn't within the statute, notwithstanding our misgivings perhaps, we're not the forum in which to amend the statute. Well, it's my position that the statute is subject to interpretation beyond its normal and ordinary meaning of the words contained therein. And as such, the legislature would never have intended that what occurred in this case by the passing of that particular statute. But a step further, the immunity, I mean, whichever section you're referring to, and there's a lot of different ones and it's a fairly complex statute, I believe has as its purpose, whether you're a cop, a treasurer, a clerk in the clerk's office, that you're doing your work and your work may have caused some defamatory expression to be disseminated. But if you're doing your work, you're covered. I don't believe Officer Morris was doing his work. I think he wanted to see his case on Channel 3, 10 o'clock news, and that's why he called Officer Ponder and said, Chief, just turn into the news tonight. But didn't he say in his deposition that he was trying to get the information out to see if there were other victims who would come forward? That is what he said in his deposition a year after he did what he did.  That's not what he was wanting at all. That's the genuine issue of fact. Why did you do it? Well, who's going to testify to anything differently? He will. And the jury will have an opportunity to decide whether he's telling the truth. He's going to say he didn't do it to bring other victims up? Well, he'll be certainly on the stand subject to cross-examination. So your position is the jury doesn't have to believe him? That is absolutely correct, because it's an affirmative defense, and they have to prove it. They have to prove what? They have to prove that they're entitled to the immunity. But it's immunity for providing information. What's going to contradict that he was providing information to the media? That it wasn't done pursuant to his job as a police officer, that it was done to ingratiate himself. So if I understand your theory, you're saying he acted outside the scope of his employment. That's your theory. That's what you're alleging, perhaps willfully. And if he did so, he's not entitled to the immunity from lawsuit. And the question of whether he did act outside the scope of his employment is one of fact. Well, I believe, I understand that question. I believe that whatever he did, if it was not pursuant to a police practice, and it wasn't done pursuant to really investigating this case, but he wanted to see his name on the 10 o'clock news, then it is a question of fact after the jury is given an instruction as to what it means to do something in the scope of employment, as to whether he was in fact doing it, even though it was outside his duties in the scope of employment. Is there any evidence that he had a personal relationship with Mr. Stratton? Didn't know him. Didn't know him at all. Didn't know him at all. So there's no grudge, no revenge? No. Just my case is built that this was a police officer who just wanted to enjoy that his case was on the 10 o'clock news. That's why I called Ponder. Even later on in his deposition, he says, you know, I don't have time to do these kind of cases. What precisely did you allege in your complaint as to the officer's conduct? I'm sorry, Your Honor? What precisely did you allege in your complaint? I alleged that subsequent to the taking of this report, before he did anything else, he released the information to a television station. Right. And did you allege that he did that for his own notoriety? He did it, is his name in the paper, as you've said? No. Well, don't you have to allege that? His motives for doing it? Well, isn't that, I'm trying to understand your theory, and I guess I inartfully tried to suggest to you what I thought it was, but apparently I'm wrong. You're not alleging he's outside the scope of his employment at all? Well, I did check before I came over here, I checked yesterday to see the definition of IPI. IPI has a specific definition in the scope of employment in this or in any agency responding on a superior case. And it would be a jury question. It would be a jury question. They might say, you know what, what he did was wrong, and it wasn't what a cop did, and therefore we're going to hold him liable and not the village. Or they could say, you know, he called from the police station and he met, he had his uniform on, he had just taken a complaint from the father of this athlete, and it was in the scope of his employment. It's a question of fact. Didn't, before Judge Schunkweiler, you concede that he was acting within the scope of his employment and it was just an argument concerned with the negligent misrepresentation or the improper provision of information? That is, you're talking about the scope of employment being an issue at this point, but that really wasn't the position of the… I don't think it was ever, I don't think the issue was ever brought up that I recall. Well, the question of the application of the Tort Immunity Statute 2-210, when you argue that that didn't apply, the argument wasn't then, if I understand correctly, is still not now until this oral argument that this wasn't within the scope of his employment. The clause of the first sentence, public employee acting in the scope of his employment. Instead, it's that this was negligent misrepresentation or the improper provision of information. Wasn't that what you argued? What I recall, that that was, I recall that the motion to reconsider, I don't know if Your Honor is referring to that hearing or the original, but I know I was clear in front of the motion to reconsider that this particular case involves a police officer. Who certainly was in the scope of his employment, but did an act that should not be covered by the immunity statute. Well, it seems to me essentially what you're arguing is the provision of information by police officers within the scope of his employment was done for improper motives. It was an unnecessary or improper provision or something along those lines, but wouldn't we have to be essentially amending the statute with regard to the provision of information to add in there language like, he's, immunity applies if a public employee acting in the scope of his employment is not liable for injury caused by the provision of information properly disseminated. Well, I suppose. That is, suggesting for a proper motive under certain circumstances. That's not what they wrote. But cannot the court say that if this particular statute requires some construction, that a legislature would never have wanted a result such as this to occur? They do not pass laws to create absurdities. Well, that's a good argument, but at the same time, an argument I think could be made that the legislature, particularly in providing for immunity for police officers on provision of information, would not want the courts, as you're essentially inviting us, to interpret the statute so as to put in that language and put us in a position of second-guessing rather late after the fact, whether or not this was necessary, proper, done under the appropriate circumstances. And indeed, as Justice Pope pointed out, it's conceivable that he might have had a good motive, albeit mistaken, but none that we would necessarily find persuasive, by saying, well, I wanted to see if other people would have come forward to let him know about all this, had we been the chief of police, to say, no, that's probably not a good thing to do. But do we really want the courts to be second-guessing, or juries to be second-guessing police in this context? I don't think that may have been what the legislature intended either. I don't think the court has to second-guess. I just think it has to allow the jury to make that decision, whether he's telling the truth. Well, then the cops being second-guessed, whether it's by the court or the jury, is he not? Well, if we accept the question that Judge Schunkweiler asked, why did he did it, I don't think he's being second-guessed. That's the issue that he was dwelling on. Why, why, why? I'm saying he didn't do it for a police purpose. He did it for his own personal satisfaction. See, that seems to be the problem. If the question that Judge Schunkweiler asks is why did he do it, we won't know whether there's liability attached to his action until we've had a resolution sometime later, after carefully examining and cross-examining all the people involved. Whereas the legislature may have decided with this immunity statute, that's exactly the kind of analysis or situation we want to avoid. Reasonable people can disagree, I respect that. Well, it's a tough question. I just think we're taking away the remedy through, if the motives were impure, if it wasn't done to further in any way the advancement of the investigation of this case, but was purely just for him to see his case on his TV. Self-aggrandizement. Self-aggrandizement, absolutely. Then I think the jury should decide that. That seems to be an issue of fact. Why? Counsel, you'll have your vote. Thank you, sir. Thank you. Mr. Martin? Good morning. I'm Jack Martin. I represent Officer Morris and the village of Lament. I think I would start with this topic of scope of employment. I was looking at the complaint during the argument, and the complaint mentions these things about it being reported to him, that he went to the press, and so forth. And it alleges in the fourth page and the sixth page, paragraph 15, that at all times relevant herein, defendant James Morris was a police officer of the defendant of the village of Lament, and his actions as described herein were performed pursuant to and within the scope of his employment. So this isn't an issue before us? No. We admitted it. It never came up. Does it allege in the complaint that the police officer went to the press for his own notoriety, didn't do it for his own satisfaction, as counsel just argued a few minutes ago? No. Are those allegations in the complaint? No, they're not. If they were there, would this be a different case? I don't think so. I think it's a blanket immunity, just like the discretionary immunity is. Well, what about Mr. Simpson's argument, though, that surely the legislature would not have wanted this kind of thing to occur when they envisioned immunity for police officers or other public employees acting in the scope of their employment, which, as you point out, was alleged and you conceded, so that's not an issue before us, that we don't want cops calling up the newspapers and talking about stuff and cases and whatnot. Let's assume for the moment that there was no dispute. Yeah, I did it. I was just telling my buddies at the bowling league, hey, I'm going to be in the 10 o'clock news tonight. Was there any investigative reason for doing this? No, I just thought there would be Channel 3 news and all that. Let's assume that were the case. Would it be your position that the immunity would still apply? I think it does. There's other remedies, if it's police misconduct, there's other remedies, disciplining against the police officers, firing them. But what restores the reputation of Mr. Strack? Well, it's the legislature making the decision one way or the other. It's a policy decision. Nobody likes being investigated, and so anyone who likes being arrested. Mr. Simpson says the statute is ambiguous because clearly there should be understood as written within regarding the provision of information, some understanding that the provision of information done for a legitimate purpose or a provision of information other than for personal self-engrisement, perhaps. Why isn't he right? Well, the legislature decided that it's how easy would it be. In every case, somebody's going to say, it wasn't for police work, it was an aggrandizement. So you're going to have a lawsuit after lawsuit. Nobody likes being investigated, and so they're going to say, you can investigate me, I'm going to sue you. And, you know, we'll be here all the time. So if we don't like what happened in this case, your position is we have to hold our nose and affirm? Well, yes. But what did happen in the case? A complaint came forward. The parents said they tried to go to the school board. The plaintiff, Mr. Strack, is the president of the school board. Nothing was happening. And so he did what he had done in the past sometimes. He went to the press, asked if there was anybody else. And they came forward, I believe, because we have the three statements signed by the three girls. I believe there were other girls, but some of them didn't want to sign statements. It worked. You know, there's one way to do it. It's, you know, he exercised discretion, made a judgment call, and it was good police work. And there's no evidence that this was done for personal reasons or anything like that. Absolutely none. He was deposed by counsel. Well, of course, that gets back to the question that's been raised. Assuming you're right, let's assume you're not. Let's assume the evidence was overwhelming, that it was entirely done for personal reasons. Your position, the statute still applies? I think so. Providing information. It's a broad immunity, just like discretionary. As I mentioned, too, Gene Stratton enjoys the same protection as a school board member. Well, and I realize you already indicated the complaint alleges he was acting within the scope of his employment, and you admitted that. But what if he was acting outside the scope of his employment? You wouldn't then argue that his actions were immune from prosecution liability, would you? No. The statute says it has to be within the scope of your employment. The evidence here, the only evidence is that it was within the scope of his employment. So if he acted outside the scope of his employment, for example, he wanted to see his name on the news, there would be a cause of action against him, although there would be no respondeat superior against the city, if it's outside the scope of the employment. If it's outside the scope of the employment. So there would be a remedy, although the remedy would be confined to pursuing the officer, probably would not be able to extend that to the city by a respondeat superior, right? I would agree with that, I guess. Okay. The case law, I think, is overwhelming in our favor. The Ramos case is the case I like the best. That's the one where the fellow was arrested for domestic battery, and the police put his picture in the paper, saying he was charged with aggravated criminal sexual abuse. Now, there it was wrong. Here we're right. There they were wrong, and it still needed to be applied. And the other cases are similar. We would ask that the judge be affirmative. Thank you, Counselor. Rebuttal, please. Just briefly, the Ramos case is a good case. Here's my read on it. Mr. Ramos was arrested for domestic battery. He was subject at least to some process. Someone found a police officer probable cause that he had committed an offense, took his picture, and someone else who was either accused or convicted, and I can't remember, was wanted, wanted to know where he was. Perfectly legitimate reason to seek help from the media, find this person who's committed a serious felony, negligent act in trying to do it. I have no problem with Ramos at all, but I don't think it's anywhere near this case. This is a case about criminal procedure and criminal rights. Officer Morris never before used this tactic to go to the police. Go to the police to find people that have had due process. We don't find, we don't go to the police and expose someone who has not had due process to find victims. He had a whole list of people to investigate, to question. He had parents, he had bus drivers, he had school administrators, he had teachers, he had players past and present, coaches past and present, and he totally ignored it. I don't think this court can formulate a policy. Well, you can do that if it's successful, such as counsel has suggested. It wasn't successful. This case was investigated for three months by DCFS, reviewed by a prosecutor, and said, there's nothing here, folks. It's not a success. It's a disgrace. And I believe that my client is entitled to a remedy for that. We just want to present it to a jury. Thank you. Thanks to both of you. The case is submitted. The court stands in recess.